UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALTER CUMMINGS,

                Plaintiff,                Case No. 1:11-cv-434

v.                                         Honorable Janet T. Neff

PATRICIA CARUSO et al.,

                Defendants.

_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Petitioner Walter Cummings presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Lakeland Correctional Facility, though the actions he complains of occurred while he was housed at the Muskegon Correctional Facility (MCF). He sues MDOC Director Patricia L. Caruso, the unknown director of Prison Health Services, Inc., and the following MCF employees: Warden Shirlee Harry; Deputy Warden Michael Singleton; Assistant Deputy Wardens Shawn Brewer, Sharon Walker, and Sharon Wells; Classification Director Mario Vialpando; Grievance Coordinator Matt Brevard; Corrections Officer W.A. Wright; Health Unit Manager Mike Whalen; Physician Assistant Thomas A. LaNore; Supervisor of Nursing Mary Hubbell; and Nurse Amy S. Meyer.

According to Plaintiff's complaint and affidavit, he has had a documented history of diabetes since July 2002. He also has a documented history of chronic pain and arthritis in his right knee, hip and lower back since July 30, 2002, which was supported by x-rays taken in February 2005. Plaintiff also was seen in radiology on July 17, 2002, where he was diagnosed with chronic obstructive pulmonary disease. On June 26, 2002, Plaintiff's records reflected that he had job restrictions due to his conditions. On April 6, 2007, a physician assistant restricted Plaintiff from weight lifting, other exercise or work until further notice. In addition, a special accommodation notice was issued on April 24, 2007.

On October 10, 2007, Plaintiff experienced a sudden hypoglycemic attack. On May 1, 2008, during a special needs identification screening, Plaintiff was described as needing a low bunk on a low gallery, having a slow walk, and requiring lifting restrictions. Plaintiff injured his lower back on May 6, 2008, while trying to climb into his upper bunk. He filed a grievance the

following day.   The grievance was denied at Step I by Defendants Brevard and Singleton. Defendant Harry denied the Step II grievance on May 30, 2008.

On September 30, 2008, Plaintiff fell on the floor because of low blood sugar.  He injured his head and lower back.  The Endocrine-Chronic Care Clinic noted on November 19, 2008, that Plaintiff's pain in his lower legs was attributable to diabetic neuropathy.  Plaintiff again injured his back on December 18, 2008, when he fell on the ice.  He was still having lower back pain on January 15, 2009, when he was assessed in nurse protocol.

Plaintiff complains that, when he arrived at MCF in May 2008, he was not reassigned to a new job chronologically, as required by policy.  *See* MICH. DEP'T OF CORR., Policy Directive 05.01.100, ¶ T (eff. Nov. 1, 2010).  As a consequence, Plaintiff was not assigned to a job until May 2009.  In addition, the job assignment was not made in accordance with policy because medical information was not obtained before he was classified to his yard job.  Plaintiff contends that Defendants LaNore, Whalen and Hubbell all failed to notify the classification director of Plaintiff's medical restrictions.

On May 10, 2009, Plaintiff was notified of a job assignment to the yard crew.  He reported to his assignment the following day, where he informed his supervisor of his health problems.  Plaintiff sent a kite to health care about his inability to perform the assigned work, and he wrote to Defendants Harry and Vialpando on May 12, asking to be reclassified because of his health conditions and prior injuries, citing a violation of MICH. DEP'T OF CORR., Policy Directive 05.01.100, ¶ L.  That same date, he requested health care treatment for his back, which he had reinjured while attempting to perform the assigned work.  Officer Irby sent Plaintiff to health care, and Nurse Blohm treated his lower back problem with warm compresses and ibuprofen.

Nevertheless, Plaintiff appeared for work the following day and attempted to perform the job assignment. He again injured his back and was picked up from his job by health care. Defendant LaNore placed Plaintiff on lay-in status and issued a five-day medical detail for back rest. Plaintiff also was given a wheelchair for use during his medical detail. Plaintiff asked for pain medication on May 14, as the result of continuing pain. On May 18, 2009, Defendant Nurse Meyer made an entry in the medical progress note indicating that Plaintiff had been observed getting around in the unit. Plaintiff's wheelchair accommodation was replaced by an authorization to use a cane between May 18, 2009 and June 18, 2009. Plaintiff complained to health services on May 19 that his medication was not stopping the pain. He complained again on May 21. Plaintiff makes no allegations that he was denied medication.

On May 22, 2009, Plaintiff reported for work using a cane. Defendant Wright assigned Plaintiff to mow the yard with a push lawn mower. Wright advised Plaintiff to either perform the job or to sign an assignment waiver. Plaintiff did not wish to sign the assignment waiver, as it would have resulted in his being placed on "OO status,"[1] which would have required him to remain in his cell during normal working hours. Plaintiff did not immediately comply and advised Wright that he wished to return to his unit and seek input from health care. Defendant Wright issued him a major misconduct ticket for disobeying a direct order and being out of place. Wright also filled out an assignment waiver form indicating that Plaintiff had refused to perform his job. Plaintiff contends that he never refused the assignment. Plaintiff was placed on OO status on May 23. Plaintiff filed a grievance about being wrongly classified under MDOC policy. On June

---

[1]"OO status" is a commonly used prisoner reference to unemployable status as defined under MICH. DEP'T OF CORR., Policy Directive 05.01.100, ¶ W. Unemployable prisoners are not "permitted to participate in any more leisure time activities than those who work full time." *Id.* at ¶ Y  The restriction does not apply to prisoners "who are unemployable due to medical restrictions . . . ." *Id.*; *see also* Policy Directive 05.01.100 at ¶ W.

9, 2009, Plaintiff was found not guilty of the major misconduct.  Plaintiff complains, however, that he was never reclassified after being found not guilty, in violation of MDOC policy.  MICH. DEP'T OF CORR., Policy Directive 05.01.100, ¶ CC.  As a result, he was on OO status for more than 80 days.  Plaintiff wrote Defendant Caruso about being unfairly placed on OO status.

Plaintiff complains that, based on the recommendation of Defendants Brevard and Singleton, Defendant Harry placed Plaintiff on modified access status on July 13, 2009, for filing two rejected grievances.[2]  Plaintiff also complains that Defendants Hubbell, Whalen, Harry, Brewer, Singleton, Brevard and Caruso denied several of Plaintiff's grievances.  In addition, he complains that Defendants Caruso, Harry, Brewer, Vialpando, Brevard, Wright, LaNore, Wells, Whalen, Hubbell, Meyer, Walker and the unknown director of Prison Health Services violated his right to due process under the Fourteenth Amendment by conspiring to disregard his complaints about being improperly placed and kept on OO status.  He also contends that Defendants were negligent and deliberately indifferent to his medical needs, in violation of the Eighth Amendment and the Americans with Disabilities Act (ADA).  For relief, Petitioner seeks compensatory and punitive damages and injunctive relief.

---

[2]Under Michigan Department of Corrections policy, a prisoner is placed on modified access for filing "an excessive number of grievances which are frivolous, vague, duplicative, non-meritorious, raise non-grievable issues, or contain prohibited language . . . or [are] unfounded . . . ."  MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ HH (eff. July 9, 2007).  The modified access period is ninety days and may be extended an additional thirty days for each time the prisoner continues to file a prohibited type of grievance.  *Id.*  While on modified access, the prisoner only can obtain grievance forms through the Step I coordinator, who determines whether the issue is grievable and otherwise meets the criteria under the grievance policy.  *Id.* at ¶ KK.

**Discussion**

I.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v.*

*Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff's allegations against the various Defendants fail to state a claim for numerous reasons.

### A.        Placement on Unemployable Status

1.        Due Process

Plaintiff alleges that Defendants deprived him of his right to procedural due process by failing to assign him to suitable prison employment on a timely basis and by improperly placing him on unemployable status when he could not physically perform his work assignment.  Plaintiff also contends that his placement on unemployable status was in violation of MDOC policy directives.  He contends that, because he was physically unable to work, he should have been exempt from unemployable status under MICH. DEP'T OF CORR., Policy Directive 05.01.100, ¶¶ X, Y (stating that unemployable status and associated restrictions do not apply to prisoners who are unemployable due to medical restrictions).

Defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation.  *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992).  Section 1983 is addressed to remedying violations of federal law, not state law.  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.  As a consequence, Plaintiff's due process claim based on the violation of state policy is without merit.

Moreover, Defendants' decision to place Plaintiff on unemployable status does not rise to the level of a due process violation. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claims involves two steps: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

To the extent that Plaintiff complains that he was not assigned to an appropriate job consistent with his health restrictions, Plaintiff fails to state a claim. The Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job.").

Moreover, to the extent that Plaintiff complains that his placement on unemployable status was implemented without due process, he also fails to identify an interest of constitutional magnitude. Plaintiff's unemployable status results in his leisure activities being limited to the amount allowed to other prisoners working full time. Such a restriction falls far short of being either atypical or significant. *See Williams v. Straub*, 26 F. App'x 389, 390-91 (6th Cir. 2001) (placement on unemployable status does not require a hearing to accord with due process). Indeed, it is apparent from the restriction itself that the limitation is completely typical, as the limits, by definition, are the same as those for working prisoners.

In sum, Plaintiff has no liberty interest in his placement on unemployable status. As a consequence, he fails to state a procedural due process claim.

2.      Eighth Amendment

Plaintiff complains that his assignment to yard duty amounted to cruel and unusual punishment, in light of his serious medical limitations. He alleges that Defendants forced him to work in a job that he was physically unable to perform and caused him to reinjure his back

- 9 -

attempting to comply.  In addition, Plaintiff complains that his placement on unemployable status violated the Eighth Amendment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).   The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).   "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.

An Eighth Amendment claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004).  If, however, the need involves "minor maladies or non-obvious complaints of a serious need for medical care,"

*Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff's claims do not demonstrate any deprivation of medical care, much less that Defendants were deliberately indifferent to Plaintiff's obvious serious medical needs. According to Plaintiff's own allegations, he regularly was treated for his back complaints, and he fails to identify any occasion on which his need for treatment was ignored. After he was injured, he was seen in health care, given a medical detail excusing him from work, provided the temporary use of a wheelchair, and subsequently given a cane. He alleges no occasion on which a Defendant denied him needed care. Further, no Defendant ever forced Plaintiff to work in the yard. Plaintiff was merely assigned to a job, which he had the option of refusing to perform. Although his refusal could have resulted in his placement on unemployable status and limited his leisure activities, being faced with such a choice does not constitute deliberate indifference to Plaintiff's serious medical needs.

Moreover, mere placement on unemployable status does not amount to cruel and unusual punishment. Plaintiff's allegations do not involve a deprivation of food, medical care or

sanitation or another intolerable prison condition.  *See Rhodes*, 452 U.S. at 348.  He alleges only that

he should not be subjected to the limitations on leisure activities that are placed on other

unemployable prisoners.  The Eighth Amendment does not entitle Plaintiff to a particular program

or classification status simply because he has medical conditions.  Instead, the amendment entitles

him to constitutionally adequate medical care for his condition and other minimally adequate

necessities.  *Id.* at 347.  Custody restrictions that are limiting or even harsh, but are not cruel and

unusual under contemporary standards, are not unconstitutional.  *Id.*  Thus, federal courts may not

intervene to remedy conditions that are merely unpleasant or undesirable. The courts routinely have

held that even placement in segregation is a routine discomfort that is "'part of the penalty that

criminal offenders pay for their offenses against society.'"  *Hudson v. McMillian*, 503 U.S. 1, 9

(1992) (quoting *Rhodes*, 452 U.S. at 347).  Plaintiff alleges a far less restrictive confinement than

segregation.  His allegations therefore fail to state an Eighth Amendment claim.

### 3.    ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by

reason of such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42

U.S.C. § 12132.  To make out a prima facie case under Title II of the ADA, a plaintiff must establish

that (1) he has a disability; (2) he is otherwise qualified; and (3) he is being excluded from

participation in, being denied the benefits of, or being subjected to discrimination under the program

solely because of his disability.  *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005)

(citing *Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003)).  Therefore, in the instant case,

in order to state a claim under Title II of the ADA, Plaintiff must show that he is a "qualified

person," that his health problems constitute a "disability," that exemption from OO status is a "service, program, or activity" of the state, and that he is being denied the exemption solely on the basis of his disability.

Although Plaintiff mentions the ADA in the body of his complaint, he fails to set forth any factual allegations that would demonstrate either that he has a disability within the meaning of the statute, that OO status is a program of the state, or that he is being denied an exemption from OO status solely because of that disability.  Further, he fails entirely to specify which of Defendants' actions caused the denial of those rights.  Conclusory allegations of unlawful conduct without specific factual allegations fail to state a claim.  *See Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 555.  Plaintiff therefore fails to set forth an ADA claim.

### B.    Conspiracy

Even assuming that Plaintiff could state a claim against a Defendant, his conspiracy claim would be without merit.  Plaintiff alleges that all Defendants conspired to deny him his rights under the Eighth Amendment, the Due Process Clause and the ADA.  To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987);  *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985).  A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by

the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F. Supp. 418, 422 (W.D. Mich. 1988). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1196 WL 43541, at *3 (6th Cir. Feb. 1, 1996). A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. Michigan,* No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995).

Plaintiff's allegations of conspiracy are conclusory and speculative. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. *See Twombly*, 550 U.S. at 556 (requiring factual allegations); *see also Iqbal*, 129 S. Ct. at 1250. Moreover, as previously discussed, since Plaintiff neither fails to adequately allege that any Defendant violated his federal rights, Plaintiff cannot demonstrate that any alleged agreement was intended to deprive him of a federal right.

### C.    Supervisory Liability and Denial of Grievances

Further, numerous Defendants are entitled to dismissal from the complaint because Plaintiff fails to allege that they engaged in active unconstitutional conduct. Plaintiff alleges that Defendants Hubbell, Whalen, Harry, Brewer, Singleton, Brevard, and Caruso improperly denied several of Plaintiff's grievances. He also alleges that Defendants Caruso, Harry, Brewer, Vialpando, Brevard, Wright, LaNore, Wells, Whalen, Hubbell, Meyer, and Walker failed to respond to his complaints about his classification. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation

must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendants Caruso, Harry, Brewer, Vialpando, Brevard, Wright, LaNore, Wells, Whalen, Hubbell, Meyer, Walker, Singleton, or Brewer engaged in any active unconstitutional behavior by failing to respond to his complaints or deny his grievances.

### D.      Placement on Modified Grievance Access

In addition, to the extent that Plaintiff complains that Harry, Brevard and Singleton improperly placed him on modified access, he fails to state a claim. Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907,

at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Moreover, even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file an institutional grievances.  *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343 (1996); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977).  The exhaustion requirement only mandates exhaustion of available administrative remedies.    *See* 42 U.S.C. § 1997e(a).  If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. Plaintiff therefore fails to state a cognizable claim based on his placement on modified access.

### E.    Director of Prison Health Services

Beyond being listed as a conspirer with the other Defendants, the unknown director of Prison Health Services is not named in the body of the complaint, except to the extent that he is alleged to have been one of the conspirators.  It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.  *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).  Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where complaint did not allege with any degree of specificity which of the named defendants were

personally involved in or responsible for each alleged violation of rights).  Because Plaintiff's

allegations fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a

short and plain statement of the claim showing that the pleader is entitled to relief"), his complaint

against the unknown Director of Prison Health Services must be dismissed.

### Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the

Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28

U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith

within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611

(6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no

good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the

$455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless

Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).

If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  June 14, 2011                           /s/ Janet T. Neff
                                                Janet T. Neff
                                                United States District Judge